UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DANIELLE NICOLE MILLER, individually and as personal representative of the Estate of Michael J. Miller, deceased; MLM, a minor child; KENT A. MILLER; and DEIRDRE BOCKELMAN;<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHAEL D. SCHRADER, individually and as Sheriff of Whitley County, Indiana; the WHITLEY COUNTY SHERIFF'S DEPARTMENT; WENDELL ENYEART, individually and as Administrator of the Whitley County Jail; WHITLEY COUNTY; WHITLEY COUNTY BOARD OF COMMISSIONERS; TODD REED; PAUL E. WHITESELL, in his official capacity as Superintendent of the Indiana State Police; the INDIANA STATE POLICE; BRANDON CHORDAS; JANE DOES whose names remain unknown; and JOHN DOES whose names remain unknown;<br><br>    Defendants. | No: 1:08 CV 189 |

**OPINION and ORDER**

**I.    INTRODUCTION**

Plaintiff Danielle Miller, individually and as personal representative of the Estate of Michael Miller (the "decedent"); the decedent's parents, Kent A. Miller and Deidre Bockelman; and the decedent's minor child, "MLM," filed the present lawsuit in which they asserted claims arising out of the death of the decedent on June 17, 2005, while he was incarcerated at the Whitley County Jail. (Compl. ¶¶ 55–57.) The defendants that

remain in this case can be separated into three groups: (1) Whitley County and the Whitley County Board of Commissioners (the "County defendants"); (2) the Whitley County Sheriff's Department; Sheriff Michael Schrader; Wendell Enyeart, administrator of the Whitley County Jail; and Jail Officer Brandon Chordas (the "Sheriff's Department defendants"); and (3) Indiana State Trooper Todd Reed.

In a prior order, District Court Judge Richard L. Young dismissed the decedent's parents, minor child, and wife as plaintiffs in the federal claims brought pursuant to 42 U.S.C. § 1983 on standing grounds, dismissed the Indiana State Police and Paul Whitesell in his official capacity as Superintendent of the Indiana State Police as defendants in this case on sovereign immunity grounds, and dismissed Count I as alleged against the County defendants. (Order, DE # 81.) The case was then transferred to this district and division.

Each of the three groups of remaining defendants filed a separate motion for summary judgment. (DE ## 123, 129, & 142.) Plaintiffs failed to respond to any of the motions. Counsel for plaintiffs participated in a telephone conference with counsel for defendants and Magistrate Judge Roger Cosbey on March 30, 2010, at which time counsel for plaintiffs conceded that the deadline to file responses had passed and that the motions were ripe for ruling. (DE # 147.) On October 20, 2010, the court instructed plaintiffs to show cause why the unnamed defendants, "Jane Does and John Does whose names remain unknown," should not be dismissed for failure of service. (Order, DE # 156.) Plaintiffs responded that they had no objection to the dismissal of the

2

unnamed defendants. (DE # 157.) For the reasons set forth below, the defendants' motions for summary judgment are granted, the unnamed defendants are dismissed from this case, and final judgment in favor of defendants is warranted.

II.     BACKGROUND[1]

On May 8, 2004, Trooper Reed stopped the decedent in Whitley County, Indiana, for driving his car left of the center line. (Compl. ¶¶ 12, 108.) According to Reed's affidavit, it was nearly 2:00 a.m. when the traffic stop occurred. (Reed Aff. ¶ 5.) Reed further attested that upon approaching the vehicle, he detected the odor of marijuana and saw a piece of a leafy plant that looked like marijuana on the decedent's thigh. Reed then handcuffed the decedent, searched his car, and found remnants of marijuana and marijuana cigarettes. (Reed Aff. ¶¶ 10, 12-14.) As a result of the traffic stop, Reed arrested the decedent. (Compl. ¶ 16.)

The decedent was charged with operating a vehicle while intoxicated, possession of drug paraphernalia, and possession of marijuana. (Reed Aff. ¶ 21.) The decedent pleaded guilty to lesser charges "to avoid the risk of a greater sentence or additional charges." (Compl. ¶ 19.) As part of the sentence ordered as a result of the plea bargain, the decedent was placed in a work release program administered through the Whitley County Jail. (*Id.* ¶ 20.) Under this program, the decedent was released from the Whitley County Jail in the morning, worked at his family's businesses during the day, and

---

[1] Most of plaintiffs' allegations were aptly summarized by Judge Young in his ruling on defendants' motion to dismiss. Unless otherwise designated, the following facts are not in dispute.

returned to the Whitley County Jail at night. (*See id.* ¶¶ 22–23.) On June 16, 2005, the day before the decedent's death, the decedent left the jail at approximately 10:00 a.m., worked during the day, and returned at approximately 7:10 p.m. that evening. (*Id.* ¶¶ 22–23.)

Plaintiffs have provided no evidence of what transpired the evening before and morning of his death, but have alleged the following in the complaint. According to the plaintiffs, the decedent returned to the jail that night, coherent and in control of his faculties, but demonstrating obvious adverse effects from prescription medications. (*Id.* ¶ 24.) Plaintiffs further alleged in the complaint that while the decedent was receiving additional medications from jail staff that night, the decedent used the jail's medication cart to hold himself up and Officer Chordas asked the decedent if he was on drugs. (*Id.* ¶ 32.) Plaintiffs also alleged that despite this, jail officers (including presumably Chordas) did nothing to provide the decedent with assistance, signed the medical log for the decedent who was unable to sign his own name, and dispensed additional prescription medications without contacting a jail physician or nurse. (*Id.* ¶ 33.)

Plaintiffs claim that after receiving his medications, decedent became more incoherent, started stumbling around the jail, fell asleep while eating, and became unable to communicate. (*Id.* ¶ 36.) According to plaintiffs, around 2:00 a.m. or 3:00 a.m., a jail officer shined a light into the decedent's cell, found him lying on the floor near the toilet with red fluid coming from his mouth, and told him to return to his bunk. (*Id.* ¶¶ 47–48.) Plaintiffs allege that the decedent tried to comply with the request but could

4

only stagger around his cell and that jail officers had to assist the decedent into his bunk. (*Id.* ¶¶ 49, 52.) Plaintiffs claim that no one checked on the decedent until 6:40 a.m. the next morning, when decedent was found blue and cold to the touch, and that decedent was pronounced dead at 6:54 a.m. on June 17, 2005. (*Id.* ¶¶ 52-57.)

Officer Chordas, the only jail officer named as a defendant in this case, attested via affidavit that the events of the night before and morning of the decedent's death occurred somewhat differently. In his affidavit, Chordas attested that he saw the decedent when the decedent returned from his work release program on June 16 and that he and the decedent talked about the fact that the decedent had a sunburn. (Chordas Aff. ¶ 6.) Chordas stated that the first time he noticed that the decedent was acting strangely was around 10:00 p.m. At that time, the decedent asked Chordas for one of his prescription numbers because he was running low on it and wanted to ask his doctor for a refill. (*Id.* ¶ 7.) Chordas stated that the decedent had trouble focusing during this conversation and that Chordas had to repeat the prescription number several times. (*Id.* ¶ 8.) Chordas attested that the decedent stated that he was simply very tired. (*Id.*)

Chordas further testified that he next encountered the decedent at 2:00 a.m. the following morning, at which point the decedent was sleeping on the floor of his cell. (*Id.* ¶ 9.) Chordas attested that the decedent was groggy and incoherent at that time. (*Id.* ¶ 12.) Chordas stated that he and the decedent laughed about the situation and that the decedent apologized, stating that he had fallen asleep on the floor because he had not

5

gotten much sleep lately. (*Id.* ¶ 9.) Chordas testified that his experience with the decedent was that he had very erratic sleep patterns and was known to fall asleep surrounded by books and an alarm clock with a light. (*Id.* ¶ 10.) Chordas also stated that the decedent often exhibited "bizarre behavior in general," talked non-stop, and played air guitar, and that "[i]t was difficult to tell what was 'abnormal' where Michael [the decedent] was concerned." (*Id.* ¶ 14.)

Chordas attested that the decedent arose unassisted, pulled an "atomic fireball" candy out of his mouth and threw it in the toilet, and went to his bunk. (*Id.* ¶ 11.) Chordas attested that he asked the decedent several times if he was okay and that the decedent indicated that he was. (*Id.* ¶ 12.) Chordas stated that by the time he left the decedent's cell, the decedent was lucid. (*Id.*) Chordas further stated that he checked on the decedent at 3:00 a.m. and 4:00 a.m. (*Id.* ¶ 13.)

According to an Indiana State Police investigation into the decedent's death, the decedent tested positive for numerous drugs including Benzodiazepines/Alprazolam, Methadone, Opiates/Hydrocodone, Tricyclics/Amitriptyline and Nortipline, antihistamines/Dyphenydramine, and stimulants/cotinine. (Boyd Dec. ¶ 14.) A coroner reported that the decedent had ingested quantities of Oxycontin and Methadone sufficient, in combination, to cause death. (Boyd Dec. ¶ 10.)

## III. LEGAL STANDARD

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). RULE 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing that there is an absence of evidence to support the non-moving party's case. *Carmichael v. Village of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex,* 477 U.S. at 323). To overcome a motion for summary judgment, the non-moving party must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The nonmoving party must show that there is evidence upon which a jury reasonably could find for him. *Id.*

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

## IV. DISCUSSION

### A. County Defendants' Motion

The only claim remaining[2] against the County defendants is plaintiffs' contention, contained in Count IV of the complaint, that the decedent suffered a constitutional injury as a result of the County's insufficient funding of the jail. According to plaintiffs, the County defendants' failure to properly fund the jail caused jail personnel, including health care professionals, to be insufficiently trained to monitor and respond appropriately to the decedent's needs. Plaintiffs have sued both Whitley County and the Whitley County Board of Commissioners, which are legally the same entity. *Owen County Council v. State ex rel. Galimore,* 95 N.E. 253, 256 (Ind. 1911).

---

[2] Plaintiffs also named the County defendants in Count I of the complaint, which contained allegations related to the administration of the jail. However, that claim–to the extent it alleged wrongdoing by the County defendants–was dismissed previously in this lawsuit because the County defendants had no control over the administration of the jail. As Judge Young's prior order states, that responsibility falls under the purview of the Sheriff. (Order, DE # 81 at 16.)

In a case against a municipal entity such as Whitley County, a Section 1983 plaintiff is required to show that the conduct causing the plaintiff's injury was the result of that municipality's "official policy." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80 (1986). An "official policy" exists in three forms: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) a constitutional injury caused by a person with final policymaking authority. *Estate of Sims ex rel. Sims v. County of Bureau,* 506 F.3d 509, 515 (7th Cir. 2007).

The County defendants have pointed out plaintiffs' lack of evidence to satisfy this "official policy" requirement as applied to plaintiffs' claim that the County defendants underfunded the jail. In fact, the County defendants have pointed to evidence from which a factfinder might infer that the County has historically adhered to a practice of *over*funding the jail. Specifically, defendants' evidence indicates that during the three years preceding the decedent's death, the County Council appropriated hundreds of thousands of dollars per year for the operation of the jail, and that at the close of some of those years, thousands of appropriations dog-eared for the jail were reduced because they had not been used.

In response to this evidence, plaintiffs were required to come forward with specific facts demonstrating that there is a genuine issue for trial. *Carmichael,* 605 F.3d at 460. However, plaintiffs failed to respond to defendants' motions for summary judgment and thus have presented no evidence that the County adhered to an express

9

policy to underfund the jail. Plaintiffs also present no evidence of a widespread practice of underfunding. Nor do plaintiffs point to any evidence that a person with final policymaking authority caused the jail to be underfunded. Accordingly, the County defendants are entitled to summary judgment on plaintiffs' insufficient funding claim.

## B. Sheriff's Department Defendants' Motion

The Sheriff's Department defendants have moved for summary judgment on the counts remaining against them: Count I, in which plaintiffs essentially allege a failure to care for inmates in the administration and operation of the jail; Count II, in which plaintiffs allege a failure to supervise jail personnel; and Count VI, in which plaintiffs claim that the Sheriff's Department defendants altered and/or spoilated evidence.

To the extent plaintiffs have sued Sheriff Schrader, Administrator Enyeart, and/or Officer Chordas in their official capacities, these suits are equivalent to a suit against the Sheriff's Department itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Like plaintiffs' claim against the County, plaintiffs' claims against the Sheriff's Department are dependent on plaintiffs' ability to prove that the alleged constitutional violations complained of were caused by an official policy of the Sheriff's Department. *Pembaur*, 475 U.S. at 479-80. The Sheriff's Department defendants have pointed out that plaintiffs have no evidence of an official policy in support of either Count I or II. In support of their own defense, the Sheriff's Department defendants have produced the affidavit of the Sheriff in which he explains the jail's policies of caring for inmates, its medical care procedures, and its emergency services. In response, plaintiffs have

remained silent. In doing so plaintiffs have failed to convince the court that there is any genuine issue of material fact warranting trial on plaintiffs' claims contained in Counts I and II against the Sheriff's Department or Sheriff Schrader, Administrator Enyeart, and Officer Chordas in their official capacities.

The Sheriff's Department defendants also moved for summary judgment to the extent that plaintiffs have sued Sheriff Schrader, Administrator Enyeart, and/or Officer Chordas in their personal capacities. Plaintiffs appear to base both Counts I and II on alleged violations of the Eighth Amendment's prohibition of cruel and unusual punishment. An official violates a prisoner's Eighth Amendment rights when he displays deliberate indifference to a serious medical need. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010). To establish such a violation, plaintiffs must first demonstrate that the decedent's condition was objectively serious, meaning one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* Next, plaintiffs must show that the official "acted with a sufficiently culpable state of mind." *Id.* To establish culpability, plaintiffs must show: (1) that the official had subjective knowledge of the risk to the inmate's health; and (2) that he disregarded that risk. *Id.*

Defendants have pointed to plaintiffs' lack of evidentiary support for plaintiffs' personal capacity suits against Sheriff Schrader and Administrator Enyeart. Indeed, the record appears to be void of any evidence that either Schrader or Enyeart interacted

11

with the decedent the night before or the morning of his death or otherwise received information regarding the decedent's condition in advance of his death. By not responding to defendants' motion, plaintiffs have failed to create an issue of fact warranting trial on plaintiffs' personal capacity claims against Schrader or Enyeart.

As for Officer Chordas, the Sheriff's Department defendants point out that plaintiffs have no evidence to support their bare allegations against Chordas, nor any evidence indicating that Officer Chordas violated the decedent's constitutional rights. The Sheriff's Department defendants further support their motion for summary judgment with the affidavit of Officer Chordas, the contents of which were summarized previously. In response, plaintiffs have remained silent. Accordingly, the only evidence that the court has available to it shows that the decedent had trouble focusing at 10:00 p.m. after returning from work release, and that he told Chordas that he was very tired. This does not indicate that the decedent had such an objectively serious medical condition that even a lay person would perceive the need for a doctor's attention. Neither does Chordas' interaction with the decedent at 2:00 a.m., where he found the decedent sleeping on the floor. Chordas' affidavit indicated that the decedent reiterated that he was tired, laughed about falling asleep on the floor, and had a history of similar behavior. Chordas attested that when he left the decedent's cell, the decedent was lucid. No objectively serious medical condition would have been evident from such an interaction.

Even if evidence of an objectively obvious medical condition did exist, there is no evidence that Chordas had subjective knowledge of it and intentionally disregarded it. The decedent's strange behavior at 10:00 p.m., considered in light of the decedent's assurance that he was merely tired and his historically bizarre behavior in general, is insufficient to impute subjective knowledge on Chordas' part that something more serious was wrong with the decedent. *See Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003) (strange behavior insufficient to impute subjective knowledge of impending harm).

Further, Chordas attested that he repeatedly inquired whether the decedent was okay when he found him asleep on the floor at 2:00 a.m., was assured by the decedent that he was fine, and then checked on the decedent multiple times over the course of the evening. Without more, the court cannot conclude that Chordas knew of a serious medical condition and intentionally disregarded it. *See Patrick v. Lewis*, 397 F. Supp. 2d 1134, 1142 (D. Minn. 2005) (fact that officer checked on prisoner throughout night and had brief conversation with him during which prisoner indicated he did not need medical aid showed officer's lack of deliberate indifference).[3] Accordingly, plaintiffs

---

[3] If plaintiffs had produced additional evidence in line with the allegations they made in the complaint, plaintiffs might have been able to create some issue of fact as to whether Chordas was negligent in not watching the decedent more closely. But even this would have been insufficient to establish deliberate indifference. *See Mathis v. Fairman*, 120 F.3d 88, 92 (7th Cir. 1997) (negligence in failing to "keep a closer eye" on decedent did not support finding of deliberate indifference).

have failed to create an issue of fact warranting trial on plaintiffs' personal capacity claim against Chordas.

Plaintiffs' complaint also includes a claim for spoilation of evidence against the Sheriff's Department defendants (Count VI). In that claim, plaintiffs allege that the Sheriff's Department defendants destroyed or failed to preserve the jumpsuit worn by the decedent at the time of his death. As the Sheriff's Department defendants point out, spoilation is not an independent tort claim under Indiana law, but rather a rule of evidence. *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 355 (Ind. 2005). Accordingly, summary judgment is appropriate on Count VI of the complaint.

### C. Officer Reed's Motion

The only remaining named defendant in this case is Indiana State Trooper Reed, the police officer who initially arrested the decedent after a traffic stop in May of 2005, which plaintiffs argue led to the decedent's eventual incarceration and death in June of 2005. Reed is implicated in two of plaintiffs' claims: Count III, in which plaintiffs allege a state law claim of wrongful death; and Count V, in which plaintiffs allege state and federal claims of abuse of process stemming from Reed's initial interaction with the decedent during the traffic stop.

In Count V, plaintiffs allege both state and federal law claims of abuse of process. Abuse of process is not a constitutional tort cognizable under Section 1983 because Indiana state law provides a remedy for abuse of process. *Adams v. Rotkvich*, 325 Fed. App'x 450, 453 (7th Cir. 2009); *see also Newsome v. McCabe,* 256 F.3d 747, 751 (7th Cir.

14

2001). Accordingly, plaintiffs' federal abuse of process claim against Reed[4] fails. Under Indiana law, an abuse of process claim possesses the following elements: (1) an ulterior purpose or motive; and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Kalwitz v. Kalwitz,* No. 46A03-0912-CV-574, 2010 WL 3624418, at *9 (Ind. Ct. App. Sept. 20, 2010). As Reed points out, there is no evidence in the record that Reed had any ulterior purpose in stopping and arresting the decedent, in searching the decedent's vehicle, or in any other actions Reed took. Accordingly, summary judgment on plaintiffs' state law abuse of process claim is appropriate.

The same is true for plaintiffs' state law wrongful death claim (Count III). A wrongful death claim under Indiana law requires a showing of: (1) a duty owed by the defendant to the decedent; (2) a breach of that duty; and (3) an injury proximately caused by the breach. *Tom v. Voida,* 654 N.E.2d 776, 787 (Ind. Ct. App. 1995). Plaintiffs' argument appears to be that but for Reed's allegedly unlawful arrest of the decedent, the decedent would not have ended up in the Whitley County Jail where he eventually died.

Under Indiana law, "but for" causation is the minimum requirement of proximate cause. *Clay City Consol. Sch. Corp. v. Timberman,* 918 N.E.2d 292, 300-01 (Ind.

---

[4] The federal abuse of process claim presently at issue is plaintiffs' personal capacity claim against Reed. To the extent that plaintiffs made any official capacity claim against Reed, that claim amounted to a claim against the Indiana State Police. *See Graham,* 473 U.S. at 166. As previously explained, all claims against the Indiana State Police were dismissed from this action in a previous order of the court. (Order, DE # 81 at 7.)

15

2009) (defining proximate cause in wrongful death action). However, "but for" causation is only part of the concept of proximate cause, not the whole concept. Under Indiana law, an act is the proximate cause of an injury when "the injury is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated.'" *Id.* (citing *Paragon Family Rest. v. Bartolini*, 799 N.E.2d 1048, 1054 (Ind. 2003)). It is probably true that "but for" Reed's arrest of the decedent, the decedent would not have been prosecuted, would not have accepted a plea bargain, would not have been incarcerated at the Whitley County Jail, and therefore would not have been in jail when he died from a toxic combination of pharmaceutical drugs. However, the court holds that as a matter of law it is not foreseeable that an individual arrested during a non-violent and relatively uneventful traffic stop will later die in prison over a year later from a pharmaceutical drug interaction. In other words, the decedent's death was not the natural and probable consequence of Reed's encounter with the decedent. To find otherwise would stretch the concept of proximate cause beyond its limits. Accordingly, summary judgment is appropriate on plaintiffs' state law wrongful death claim.

    **D.    Unnamed Defendants**

In their complaint, plaintiffs designated "Jane Does and John Does whose names remain unknown" as unnamed defendants in this case. In a prior order, the court instructed plaintiffs to show cause why these defendants should not be dismissed for failure of service pursuant to FEDERAL RULE OF CIVIL PROCEDURE 4(m). (Order, DE

# 156.) Plaintiffs responded that they had no objection to the dismissal of the unnamed defendants. (DE # 157.) Accordingly, the court dismisses the Jane Doe and John Doe defendants from this case.[5]

## V.     CONCLUSION

For the foregoing reasons, the defendants' motions for summary judgment (DE ## 123, 129, & 142) are **GRANTED**. The unnamed defendants, "Jane Does and John Does whose names remain unknown," are **DISMISSED** pursuant to FEDERAL RULE OF CIVIL PROCEDURE 4(m). Because no claims remain against any defendants in this case, the clerk is directed to **ENTER FINAL JUDGMENT** in favor of defendants and against plaintiffs, stating that plaintiffs shall take nothing by way of their complaint.

**SO ORDERED.**

Date: October 27, 2010

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[5] Plaintiffs also included in the complaint a "claim" for punitive damages against all of the individual defendants (Count VII). This does not appear to be an independent cause of action, but rather a request for a particular type of damages. For the sake of clarity, the court dismisses the claim, as there are no substantive causes of action remaining in this case for which punitive damages might be assessed.